IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES V. VAUGHN | : | CIVIL ACTION |
| | : | |
| v. | : | No. 22-3615 |
| | : | |
| CAPITAL ONE BANK (USA), | : | |
| a National Association | | |

## MEMORANDUM

**Juan R. Sánchez, C.J.**                                                  **March 21, 2023**

In this action, Plaintiff James V. Vaughn asserts claims for violations of the Truth in Lending Act, 15 U.S.C. §§ 1643 and 1666(a), negligence, and fraud in the inducement against Defendant Capital One Bank. Defendant moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Because the Amended Complaint fails to state a claim upon which relief can be granted, Defendant's motion will be granted, and Vaughn's case dismissed.[1]

## FACTS

Vaughn founded Advanced Fluid Systems, Inc. ("AFS") more than thirty years ago and has been its President and Chief Executive Officer ever since. Am. Compl. ¶ 7, ECF No. 3. In 2017, AFS hired Nguyen Phuong, alias Fawn Davis (Davis), as accounts payable clerk. Id. ¶ 9. Davis was responsible for handling payment of financial obligations, opening business and

---

[1] As a threshold matter, the Court finds Vaughn has standing to bring this case. The parties dispute whether Vaughn or Advanced Fluid Systems, Inc. is the proper plaintiff. Mot. Dismiss 8-9, ECF No. 6. To establish standing, a plaintiff must have suffered an actual injury, causally connected to the conduct complained of, likely redressed by a favorable decision. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Vaughn is founder, CEO, and President of AFS. Am. Compl. ¶ 7, ECF No. 3. The credit card accounts at issue bear Vaughn's name. Id. ¶ 20. The relief sought directly relates to Vaughn's credit cards, Vaughn's credit status, and collection attempts upon Vaughn. Id. ¶¶ 32, 38, 43. Vaughn has thus sufficiently pled personal injuries connected to Capital One's conduct redressable by a favorable ruling notwithstanding that AFS funds were used to pay the fraudulent charges.  He therefore has standing to bring this case.

personal mail, and managing electronic payment of credit cards for AFS and Vaughn. *Id.* In 2018, Vaughn applied for and received a Capital One credit card and then received a replacement card in January of 2022. *Id.* ¶ 6. Between January 2019 and May 2022, Davis used these two cards for both personal expenditures and a funding scheme by which she fraudulently paid herself by charging the cards for sham services. *Id.* ¶¶ 10, 12. She then used AFS funds to pay the balance on the credit cards. *Id.* ¶ 12. In May of 2022, Capital One issued a credit card in the name of Fawn Davis and Advanced Fluid Systems without Vaughn's knowledge or consent. *Id.* ¶ 11.  Vaughn discovered the theft soon after, fired Davis, and notified local and federal law enforcement authorities. *Id.* ¶¶ 15-17.  Davis stole a total of $504,598.52 from AFS. *Id.* ¶ 13.

Vaughn notified Capital One about the fraud in June 2022. *Id.* ¶ 21. Capital One placed holds on the accounts and investigated the alleged fraud. *Id.* Capital One credited Vaughn's account for a few of the recent fraudulent charges and informed Vaughn on July 25, 2022 that it resolved the issue, and he was not responsible for those charges. *Id.* ¶ 25; Ex. D, ECF No. 3. Four days later, Vaughn, through counsel, requested information from Capital One and notified it of his intent to dispute all fraudulent transactions made by Davis over the course of her employment. Am. Compl. ¶ 23, ECF No. 3; Ex. C, ECF No. 3. Vaughn alleges that on August 8, 2022, Capital One reversed course and issued a statement to him which indicated it would not reimburse those charges.[2] *Id.* ¶ 25.

Vaughn brought claims for violations of the Truth in Lending Act (TILA) under 15 U.S.C. §§ 1643 and 1666(a), negligence, and fraud in the inducement. *Id.* ¶¶ 27, 33, 39, 44. He seeks

---

[2] The Complaint refers to Exhibit E as a "new statement to Mr. Vaughn" about his liability for the fraudulent use of the cards, but Exhibit E contains no such statement. *See* Am. Compl. Ex. E, ECF No. 3. The Court assumes Capital One provided some form of notice to Vaughn that it would not reimburse the entirety of Davis's fraud, precipitating this suit.

reimbursement from Capital One for the total amount Davis caused AFS to pay for fraudulent charges, an injunction against collection attempts, the removal and restraint of any negative credit reports, compensatory and punitive damages, and attorneys' fees and costs. *Id.* ¶ 32.

Defendant moves to dismiss all of these claims for failure to state claims for relief under Federal Rule of Civil Procedure 12(b)(6).

**STANDARD OF REVIEW**

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint "does not need detailed factual allegations" if it contains something "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). But the plausibility standard "require[s] a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citation omitted). "A facially plausible claim is one that permits a reasonable inference that the defendant is liable for the misconduct alleged." *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (citing *Iqbal*, 556 U.S. at 678). This Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989).

**DISCUSSION**

Taking all facts in the Amended Complaint as true and deciding all inferences in his favor, the Court finds Vaughn fails to plausibly state any claim for relief. Vaughn's TILA claims fail because Capital One cannot be liable under these circumstances; § 1643 may not be used for reimbursement and §§ 1643 and 1666(a) are inapplicable to actions taken with apparent authority

such as Davis had here. Further, Vaughn's negligence claim fails because Capital One neither had a duty to Vaughn as a lender nor did it proximately cause his injury. Lastly, his fraud in the inducement claim fails for lack of specificity and justifiable reliance. Hence Capital One's motion to dismiss will be granted in full.

Under 15 U.S.C. § 1643(a)(1)(B), cardholder liability for the unauthorized use of a credit card is limited to $50. TILA also prohibits a creditor from making, or threatening to make, adverse credit reports based on failure to pay disputed amounts until certain statutory requirements are fulfilled. 15 U.S.C. §§ 1666(a), 1666a. While the TILA provides important safeguards for consumers, it does not provide Vaughn with the relief he seeks.

For one, the Third Circuit has determined § 1643 of the TILA cannot be used to recover money already paid to a creditor. *Azur v. Chase Bank, USA,* 601 F.3d 212, 217 (3d Cir. 2010). In *Azur*, the President and CEO of a company faced nearly identical circumstances to Vaughn. The company hired a woman, Vanek, as a personal assistant to Azur and she was responsible for managing the mail, credit card bills, and bank accounts for Azur. *Id.* at 213. Over seven years, Vanek misappropriated over $1 million by withdrawing cash advances twice a day from a credit card account. *Id.* These transactions appeared on at least 65 monthly statements and Vanek paid the bills using the company bank account. *Id.* Azur eventually discovered the fraud and disputed his liability for the fraudulent charges and sought reimbursement under §§ 1643 and 1666 of the TILA. *Id.* at 215. In finally adjudicating Azur's claims, the Third Circuit held "§ 1643 of the TILA does not provide the cardholder with a right to reimbursement," and because "Azur vested Vanek with apparent authority to use the [] card. . . [his] §§ 1643 and 1666 claims cannot stand." *Id.* at 224.

Vaughn's TILA claims mirror Azur's. While § 1643 protects consumer borrowers from

illicit charges made when a card is lost or stolen, it speaks only to *cardholder liability*. *Id.* at 217. The statute prevents a card issuer from suing a cardholder to recover fraudulent purchases but does not "enlarge a card issuer's liability or give the cardholder a right to reimbursement." *Id. See also Sovereign Bank v. BJ's Wholesale Club, Inc.*, 533 F.3d 162, 175 (3d Cir. 2008) ("TILA § 1643 does not impose any obligation on issuers of credit cards to pay the costs associated with unauthorized or fraudulent use of credit cards. It simply limits the liability of cardholders, under certain circumstances"). Instantly, AFS hired Davis to a position of trust, much like Vanek's, from which she perpetrated her scheme. Davis was entrusted with using AFS funds to pay the Capital One accounts, as was her job, in the course of which she was able to steal AFS funds without being noticed. Am. Comp. ¶¶ 9, 14, 19, ECF No. 3. The funds have already been paid to Capital One and Vaughn's presumption that Capital One's failure to reverse "the illicit charges made on the Capital One . . . credit cards," and "refund the funds stolen from AFS" violates the statute is wrong. *Id.* ¶ 32.   "Accordingly, to the extent that [Vaughn] requests reimbursement under § 1643 for money already paid to [Capital One], his claim fails." *See Azur*, 601 F.3d at 217-218.

Vaughn's § 1666 claim fails because he has not pled his own compliance with the requirements of the statute. Section 1666 deals with the correction of billing errors, and its application requires an obligor [here, Vaughn] to give written notice to the creditor of any disputed charges *within sixty days* of the transmission of the statement containing those charges. *See* 15 U.S.C. § 1666(a); *Krieger v. Bank of Am., N.A.*, 890 F.3d 429, 437 (3d Cir. 2018) (To trigger a creditor's obligations under the statute "a consumer must submit a written notice of billing error within 60 days after receiving the statement that contains the error."). Thus, to invoke § 1666, Vaughn must demonstrate he complied with his obligations under the statute. Vaughn alleges numerous fraudulent transactions between January 2019 and May 2022, and that "[o]n or about

5

July 25, 2022," his counsel "sent written notice disputing all fraudulent charges." Am. Compl. ¶¶ 19, 20, 36, ECF No. 3. To the extent Vaughn seeks to use § 1666 to contest the years of fraudulent charges appearing on billing statements more than sixty days prior to his July 25, 2022 written notice, his claims must be dismissed. To the extent he contests charges listed on statements transmitted within sixty days of his written notice, his complaint fails to plead facts establishing his complete compliance with the statute or Capital One's failure to comply with any corresponding duty imposed on it by the statute.[3]

Vaughn's §§ 1643 and 1666 claims are also barred because Vaughn clothed Davis with apparent authority to use the Capital One credit cards. *See Azur*, 601 F.3d at 218. ("The application of both §§ 1643 and 1666 of the TILA depend, in part, on whether the fraudulent user had apparent authority to use the credit card.") These provisions of the statute only apply to "unauthorized use of a credit card," which is defined as use by a person without "actual, implied, or apparent authority for such use." *Id.* (quoting 15 U.S.C. § 1602(p)). Notwithstanding that Vaughn's conclusory pleading argues Davis did not have authority to use the card, the Court must determine whether Davis had apparent authority by examining state agency law. Am. Compl. ¶ 9, ECF No. 3; *Azur*, 601 F.3d at 219.

---

[3] Section 1666a regulates reports made by a creditor "on obligor's failure to pay amount regarded as billing error." 15 U.S.C. § 1666a(a). The Act prohibits a creditor from "directly or indirectly threaten[ing] to report to any person adversely on the obligor's creditor rating or credit standing *because of the obligor's failure to pay the amount indicated by the obligor*" in an obligor's § 1666(a) written notice. *Id.* (emphasis added). The AFS credit accounts have been paid faithfully and Vaughn points to no contested delinquent charges on the accounts that could be the basis for a credit report in violation of the statute.

Moreover, Vaughn does not point to a detrimental creditor report or credit rating, only that "[b]ased on information and belief, Capital One may intend to, or already has, made adverse reports." Am. Compl. ¶ 38, ECF No. 3. A prayer for an injunction based on a belief that a creditor *might* decide to violate a statute in the future does not state a valid claim even if the statute were applicable, which 1666a is not.

The Pennsylvania Supreme Court cites the Restatement (Second) of Agency for its definition of apparent authority:

> Apparent authority is power to bind a principal which the principal has not actually granted but which he leads persons with whom his agent deals to believe that he has granted. Persons with whom the agent deals can reasonably believe that the agent has power to bind his principal if, for instance, the principal knowingly permits the agent to exercise such power or if the principal holds the agent out as possessing such power.

*Revere Press, Inc. v. Blumberg*, 246 A.2d 407, 410 (Pa. 1968). The test then, under Pennsylvania Law, is whether Capital One, with "ordinary prudence, diligence and discretion would have a right to believe and would actually believe that [Davis] possessed the authority [she] purported to exercise." *Azur*, 601 F.3d at 219 (quoting *In re Mushroom Transp. Co., Inc.*, 382 F.3d 325, 345 (3d Cir. 2004)). In applying this test, the *Azur* court found Azur's actions led Chase to reasonably believe the years of fraudulent charges were authorized. *Azur*, 601 F.3d at 221. While Azur may not have even been aware of the existence of the credit card account, his failure to review his own bank records and exercise proper oversight over his employee led Chase to "reasonably rel[y] on the continuous payment of the fraudulent charges" because they "reasonably believed that a prudent business person would oversee his employees." *Id.* at 221-22. Vaughn argues Davis had no authority and Capital One, in its letter on July 25, 2022, "implicitly and expressly concluded that Ms. Davis did not have apparent authority," but a wronged principal will always disclaim an agent's authority *ex post facto*. Pl.'s Resp. Opp'n 8, ECF No. 8. Among other things, apparent authority operates to ensure third parties do not bear the cost of a principal's negligent oversight of a wayward agent. Consequently, conclusions made regarding actual authority and statements from the principal (Vaughn) after the damage has been done have no bearing on the Court's analysis. Rather, whether Davis had apparent authority turns on the actions of AFS and Vaughn over the course of Davis's employment and dealings with Capital One. Vaughn clearly knew about

these credit cards: he applied for them and used them himself. Am. Compl. ¶ 6, 8, ECF No. 3. By hiring Davis and tasking her with handling "financial payable obligations for AFS" and "payment of Mr. Vaughn's credit card statements," Vaughn vested her with apparent authority to act on his behalf in dealings with Capital One. *Id.* ¶ 9. The repeated and continuous payment of fraudulent charges, over a 4- to 5-year period led Capital One to reasonably believe that Davis's charges to the account were authorized.

Furthermore, "[b]y identifying apparent authority as a limit on the cardholder's protection under § 1643, Congress recognized that a cardholder has certain obligations to prevent fraudulent use of its card." *Azur*, 601 F.3d at 221 (quoting *DBI Architects, P.C. v. Am. Express Travel-Related Servs. Co.,* 388 F.3d 886, 893 (D.C. Cir. 2004)).  Indeed, this limitation arose precisely because "the cardholder is oftentimes in the best position to identify fraud committed by its employees." *Azur*, 601 F.3d at 221. Here, Vaughn could have looked over credit card statements or AFS's bank records at any point to detect wrongdoing, but he failed to do so. He cannot now use the TILA to shift liability to the card issuer for his own missteps.  Vaughn's claims under §§ 1643 and 1666 are barred and counts I and II of the amended complaint will be dismissed.

Count III alleges Capital One was negligent for failing to detect and notify Vaughn of suspicious activity regarding the credit cards. Am. Compl. ¶ 41, ECF No. 3. This claim fails for lack of duty and proximate causation. Under Pennsylvania common law, a negligence action requires a plaintiff to plead the following elements: that the defendant had a duty "to conform to a certain standard of conduct; that the defendant breached that duty; that such breach caused the injury in question; and actual loss or damage." *Phillips v. Cricket Lighters*, 841 A.2d 1000, 1008 (Pa. 2003) (internal quotations omitted). The general rule is that "a lender owes no duty of care to his borrower." *Rousseau v. City of Philadelphia*, 514 A.2d 649, 651 (Pa. Commw. Ct. 1986); *see*

*also Adams v. Wells Fargo Bank, N.A.*, Civ. No. 16-0907, 2017 WL 6619015, at *2 (E.D. Pa. Dec. 27, 2017) ("[I]t is well established that a lender owes no duty of care to his borrower. Without a duty of care between lender and borrower, there can be no claim for negligence.") (internal citations and quotations omitted). Vaughn and Capital One are borrower and lender engaged in a contractual relationship defined by the terms of that contract. To the extent Vaughn claims Capital One, as his lender, owed him an extracontractual duty to monitor the usage of his account, his claim fails to state a cause of action upon which relief may be granted.

Assuming *arguendo* Capital One did have a duty to Vaughn, his negligence claim still fails on proximate causation. Negligence requires the defendant's breach of duty to be the proximate cause of the plaintiff's injury or loss. *Phillips*, 841 A.2d at 1008. An intentional tort or criminal act by a third-party is a superseding cause of harm. *See Kote v. Bank of N.Y. Mellon*, 169 A.3d 1103, 1113 (Pa. Super. 2017) ("[The] shooter was a superseding cause of [plaintiff's] injuries, and if there was any negligence on the part of Appellees, it was not the proximate cause of the injuries"); *In re City of Philadelphia Litig.*, 714 F. Supp. 743, 745 (E.D. Pa. 1989) (quoting Restatement (Second) of Torts, section 448) ("The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom"). Davis is clearly the proximate cause of Vaughn's economic injuries. Vaughn repeatedly refers to Davis's intentional acts in perpetrating her scheme to defraud him. Am. Compl. ¶ 10, ECF No. 3 ("Davis misappropriated Mr. Vaughn's account numbers. . . with intent to steel [*sic*]." *Id.* "Davis charged "fraudulent purchases and services" and "illicitly [paid] the statements." *Id.* ¶ 12. "Davis illicitly stole and misappropriated no less than $504,598.52 from AFS." *Id.* ¶ 13. "AFS terminated Ms. Davis's employment for theft of funds." *Id.* ¶ 15. "[L]ocal authorities after investigating the theft, issued a warrant for the arrest of Ms. Davis." *Id.* ¶ 16.) It is abundantly clear from the facts alleged

in the amended complaint that Davis committed numerous tortious and criminal acts and was a superseding cause of the lost funds.  Capital One was not the proximate cause of Vaughn's harm and his negligence claim therefore fails as a matter of law. Consequently, count III will also be dismissed.[4]

Count IV alleges fraud in the inducement. Vaughn claims Capital One induced him to apply for the credit card by promising that his liability for fraud would be limited to $50. Am. Compl. ¶ 45. He claims this representation was false and was calculated to deceive him into applying for a credit card. *Id.* ¶ 51. As a threshold matter, Rule 9(b) requires fraud be pled with particularity. FED. R. CIV. P. 9(b); *see In re Westinghouse Sec. Litig.*, 90 F.3d 696, 710 (3d Cir. 1996) ("the circumstances constituting the fraud must be stated with particularity.")  In all allegations of fraud, "plaintiffs must plead the who, what, where, when, and how." *In re Great Atl. & Pac. Tea Co., Inc. Sec. Litig.*, 103 F. App'x 465, 469 (3d Cir. 2004). Under Pennsylvania Law, fraud in the inducement requires

> (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance.

*Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 257 (3d Cir. 2013).

The Court finds Vaughn fails to plead the elements of fraud in the inducement with particularity and his claim fails for lack of justifiable reliance and proximate causation. Vaughn applied for the first Capital One credit card in November 2018. Am. Compl. ¶ 6, ECF No. 3. He

---

[4] Confusingly, Plaintiff appears to walk back his negligence claim in subsequent filings. *See* Pl.'s Resp. Opp'n, 8, ECF No. 8. ("The Complaint does Not present a Claim for Negligence but rather for Fraud in the Inducement of a Contract."). For purposes of this motion, the Court limits its analysis to the facts and theory of liability in the amended complaint.

claims Capital One, through their advertising and initial application materials, informed him his liability for unauthorized and fraudulent use of the card was limited to $50. *Id.* ¶ 45. This reliance then enabled Davis to perpetrate her fraud. *Id.* ¶ 54. Under the foregoing parameters, these allegations are not specific enough to meet the heightened pleading standards for fraud. Vaughn's assertions become even less particularized in his later filings, suggesting statements like "you will never pay for fraudulent charges" made by credit card providers generally could be the basis for pleading fraud. Pl.'s Resp. Opp'n 9, ECF No. 8. Such airy and imprecise language also cannot be the basis for a valid fraud claim. Because Vaughn has not pled the facts or circumstances of this purported fraud with the particularity required by 9(b), this claim will be dismissed.

Even assuming *arguendo* that Vaughn's fraud claim was properly pled, it still fails for lack of justifiable reliance and proximate causation. As restated by the Third Circuit, fraud in the inducement requires "justifiable reliance on the misrepresentation" and "resulting injury [] proximately caused by the reliance." *Freeman*, 709 F.3d at 247. In determining whether Vaughn's reliance on these promises was justifiable, *Azur* is again illuminating. There, the court lambasted Azur's behavior as unreasonable and negligent, suggested that had Azur occasionally reviewed his credit card statements he would have discovered the fraud, and described a prudent businessperson as one who would oversee his employees in a way such that the fraud would have been discovered. *Azur*, 601 F.3d. at 221-22. The same critique applies to Vaughn. While it may be expedient to hire an assistant and make no effort to oversee her performance, it is certainly not reasonable to assume your lender will then bear the costs of this shoddy management. Even if Vaughn could point to statements made by Capital One with requisite specificity, his decision to rely on those statements and assume a years-long scheme like Davis's would cost him only $50 is both absurd and unreasonable. Moreover, as discussed in relation to negligence, Capital One cannot be said to have

been the proximate cause of injury considering Davis's intentional criminal acts as a superseding cause. Vaughn's fraud in the inducement claim thus fails both under the fraud-specific pleading standards and for failure to satisfy all elements of the tort. Accordingly, count IV will be dismissed.

For the reasons stated above, Defendant's motion to dismiss will be granted in its entirety. An appropriate Order follows.

BY THE COURT:

/s/  Juan R. Sánchez
_____
Juan R. Sánchez, C.J.

12